IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JENNIFER M. KING,

           Plaintiff,

vs.                                      CIVIL NO. 10-828 JH/LFG

MARK BENFORD, in his individual
capacity,

           Defendant.

## ORDER GRANTING STAY OF DISCOVERY AND
## GRANTING MOTION FOR PROTECTIVE ORDER

THIS MATTER is before the Court on Defendant Benford's Motion to Stay Proceedings [Doc. 23] Pending a Decision on His Motion for Summary Judgment, and Defendant's Motion for a Protective Order [Doc. 24]. Both motions are opposed. On December 6, 2010, the Court conducted a telephonic hearing on these motions. For the reasons stated hereafter, the Motion to Stay Proceedings is granted in part, to the extent that the Court stays all discovery, and the Motion for a Protective Order is granted in full.

### Background

Plaintiff Jennifer M. King ("King") brings a three-count, civil rights claim against Assistant District Attorney Mark Benford ("Benford"). King alleges in Count I Unreasonable Seizure; in Count II, False Imprisonment and Arrest; and in Count III, denial of procedural Due Process.[1] She contends that Benford exhibited a "reckless and callous disregard of, or indifference to, [her] rights

---

[1] King originally named two Doe defendants and asserted causes of action against them. She later requested and received permission to file an Amended Complaint [Doc. 20], which eliminated the Doe defendants along with Count IV of the original Complaint, leaving Benford as the sole defendant in this case.

and safety . . . ." and, therefore, demands an award of compensatory and punitive damages, together with attorney fees and costs.

Plaintiff alleges the following as the factual basis for her Complaint: In early November 1998, Benford filed a criminal complaint against Jennifer Prevost-King charging Ms. Prevost-King with issuing worthless checks. Plaintiff asserts that Jennifer Prevost-King is not the same person as Plaintiff Jennifer King, but the criminal complaint incorrectly included Plaintiff King's date of birth and social security number on the face of the complaint. The complaint and summons were mailed to Prevost-King at her last known address, and when she failed to appear in response to the summons, an arrest warrant was issued. The warrant contained Plaintiff King's date of birth and social security number, and subsequently Plaintiff King was arrested and incarcerated on the warrant intended for Prevost-King, and spent some hours in jail while her claim of mistaken identity was investigated. She was ultimately released.

In his Answer, Benford denies liability and asserts, *inter alia*, the affirmative defenses of absolute prosecutorial immunity and qualified immunity. He filed a Motion for Summary Judgment [Doc. 22] raising both absolute and qualified immunity and he now seeks a stay of proceedings, and a protective order precluding Plaintiff from taking his deposition, until the summary judgment motion is resolved.

### Immunity Defenses and Stay of Discovery

Immunity defenses not only protect government employees who perform discretionary functions from liability, but also protect them from the burdens of trial, including discovery. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004); Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992) ("we reiterate that qualified immunity is not only a defense to liability but also entitlement to immunity from suit and other demands of litigation," *citing* Siegert v. Gilley, 500 U.S.

226 (1991)).

In 2001, the United States Supreme Court reminded trial courts of their responsibility to promptly resolve immunity matters at the earliest opportunity lest the defendants lose the very benefit of the qualified immunity defense by having to participate in discovery. Saucier v. Katz, 533 U.S. 194, 200 (2001); *overruled on other grounds*, Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808 (2009). So, too, the law in this circuit is clear. When a defendant files a motion for qualified immunity, the defendant is entitled to a stay of discovery.

> Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The privilege "is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. Accordingly, qualified immunity questions should be resolved at the earliest possible stage in litigation. Saucier v. Katz, 533 U.S. 194, 201 (2001). "[E]ven such pretrial matters as discovery are to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of effective government." Mitchell, 472 U.S. at 526.

Jiron, at 414 (emphasis in original).

In 2009, the United States Supreme Court reaffirmed its long-held view that discovery be stayed when qualified immunity is asserted.

> The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including "avoidance of disruptive discovery" . . . . There are serious and legitimate reasons for this. If a government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the government . . . .

Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1953 (2009).

## **The Present Motions**

As noted above, Defendant Benford seeks to stay all proceedings in this case, including his deposition, until the summary judgment motion is decided. Plaintiff King objects to the stay of discovery, asserting unfairness in that both sides served written discovery on each other prior to Benford's filing of the motion on qualified immunity. King intimates that it is somehow unfair that Benford filed written discovery and now when King seeks to engage in discovery, Benford asserts the qualified immunity defense by way of motion and objects to discovery.

King argued at the telephonic hearing that Rome v. Romero, 225 F.R.D. 640 (D. Colo. Nov. 22, 2004) and the subsequent Vaughn v. Rhea, No. CIVA04CV01002MSKCBS, 2006 WL 994458 (D. Colo. Apr. 13, 2006) authorized discovery in circumstances similar to that of the present case. The Court rejects the argument. In Rome v. Romero, the District Court held that an assertion of qualified immunity does not automatically bar all discovery and that discovery may continue as to claims unrelated to the defense and, in some circumstances, to elicit facts pertinent to the defense.

Rome simply sets out the pre-Iqbal status of discovery. There had long been a question as to what to do when several defendants were sued and only some of the defendants were entitled to assert a qualified immunity defense; for example, if an individual officer was sued and the officer's employer was sued based on municipal liability. The officer could assert qualified immunity, but the municipality could not.

As in Romero, some courts allowed discovery to proceed as to those defendants who could not assert qualified immunity, and some courts denied discovery. That issue was laid to rest in 2009 by the United States Supreme Court's ruling in Ashcroft v. Iqbal. In that case, the plaintiff wanted to proceed on discovery as to those defendants who were not entitled to assert qualified immunity. The Supreme Court indicated that all discovery should be stayed.

> It is no answer to these concerns to say that discovery for petitioners can be deferred with pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then they would not be free from the burdens of discovery.

Iqbal at 1953.

Although there are no other defendants left in this case, the same principle applies here. If discovery were permitted as to other aspects of the case, then Benford, who is entitled to assert qualified immunity, would nonetheless be drawn back into the discovery fray. He would have to attend depositions, monitor interrogatories, and be forced to lose the very benefit to be free from the burdens of trial, including discovery, pending resolution of qualified immunity.

Not only do Rome and Vaughn predate Iqbal, but this Court does not find them persuasive under the facts of this case. In those cases, the District Court in Colorado noted that the defense of qualified immunity should be raised at the earliest possible point in the litigation, and a defendant who engages in discovery prior to raising qualified immunity by way of a motion should be required to respond to any discovery requests already served. Rome, at 644; Vaughn, at *1 ("Because Defendant Olt apparently voluntarily undertook these particular burdens of litigation before seeking a stay, despite having invoked the defense of qualified immunity, the court sees no injustice in require Defendant Olt to see them through to their conclusion").

Be that as it may, the limited discovery requests served by Defendant in the present case, prior to his motion for summary judgment, do not preclude him from later asserting qualified immunity and requesting a stay of discovery from that point forward.

Counsel for Plaintiff asserted in a message to Defendant's counsel, "it would be somewhat

5

odd for you to assert that discovery is unnecessary given that you have propounded discovery requests." [Doc. 24, Ex. 1, at 1]. Defendant, however, responded that he served only limited discovery requests – six Interrogatories and three Requests for Production on Plaintiff – seeking basic information as to Plaintiff's identity, an issue going directly to the heart of this litigation. [Doc. 24, at 1]. Defendant's counsel wrote to Plaintiff's counsel, "The only reason I filed discovery is so that we can figure out who your Plaintiff is . . . . I was hoping you could just give me some identifying information such as social security statement and birth certificate so we could know which Jennifer did what." [Doc. 24, Ex. 1, at 1].

Rome and Vaughn do not stand for the proposition that a defendant who engages in limited initial discovery may not thereafter obtain a stay in connection with a motion raising qualified immunity. While merely asserting the affirmative defense of qualified immunity in an answer is insufficient to entitle a defendant to a stay of discovery, once the defense is before the Court by way of motion, the Court has little discretion and discovery must be stayed. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (qualified immunity is more than a mere defense to liability, it is immunity from suite); Jiron v. City of Lakewood, *supra*.

If King believes that discovery on the issue of qualified immunity is necessary in order for her to respond to the motion for summary judgment, she should file a Fed. R. Civ. P. 56(f) affidavit. It is insufficient for King to simply assert that discovery is not complete, that the motion to dismiss is premature or that additional discovery must be undertaken. Rather, King's burden is to demonstrate specifically what discovery is necessary and how that discovery will assist her in overcoming Benford's *prima facie* showing. *See* Ben Ezra, Weinstein & Co. v. America Online Inc., 206 F.3d 980, 987 (10th Cir. 2000) (holding that, under Rule 56(f), nonmoving party seeking additional discovery must demonstrate precisely how additional discovery will lead to a genuine issue

of material fact);  Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1264 (10th Cir. 2006)(Rule 56(f) affidavit must state with specificity how additional discovery will rebut summary judgment motion).

Any Rule 56(f) affidavit should be presented to the undersigned magistrate judge.  The filing of the 56(f) affidavit will serve to stay the response time to the underlying motion.  Upon review of the 56(f) affidavit, the magistrate judge will determine if King makes a sufficient case for discovery.  If so, the Court will issue an order consistent with the "narrowly tailored" requirements of Maxey by Maxey v. Fulton, 890 F.2d 279, 282-83 (10th Cir. 1989), and will outline what discovery may be taken, the nature and extent of the discovery and the time limit for completing discovery.  The Court will also provide King with a new response date to the underlying motion.

Alternatively, if the Court concludes that King failed to make a sufficient case for discovery, the request for additional discovery on qualified immunity will be denied.  In that event, King will still be given a new response date to the underlying motion.

Benford was an Assistant District Attorney.  Thus, he is a government official performing discretionary functions and is entitled to assert prosecutorial immunity and qualified immunity as affirmative defenses.  Once the defense is before the Court by way of motion, as it is now, all discovery must be stayed.

## Order

IT IS THEREFORE ORDERED that Defendant's Motion to Stay Proceedings [Doc. 23] is granted in part, to the extent that discovery is stayed pending resolution of the Motion for Summary Judgment.

IT IS FURTHER ORDERED that Defendant's Motion for Protective Order [Doc. 24] is

granted, and the deposition of Defendant Benford may not be taken until after disposition of the Motion for Summary Judgment.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge